## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

| | |
|---|---|
| KIARA WEST, | Case No. |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| EXPERIAN INFORMATION SOLUTIONS, INC.; RENTGROW, INC.; and RESIDENT VERIFY, LLC, | |
| Defendants. | |

## COMPLAINT

Kiara West ("Plaintiff" or "Mr. West") by and through his counsel brings the following Complaint against Experian Information Solutions, Inc. ("Experian"), RentGrow, Inc., ("RentGrow") and Resident Verify, LLC ("Resident Verify") (collectively "Defendants") for actual, statutory, and punitive damages and costs, and attorney's fees, for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et. seq*.

## INTRODUCTION

1.      The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American consumers. Data technology, whether it is used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is

intended to lead to faster and better decision-making by its recipients and, in theory, all of society should ultimately benefit from the resulting convenience and efficiency.

2.     However, unfortunately this information has also become readily available for, and subject to, mishandling and misuse.  Individual consumers can and do sustain substantial damage, both economically and emotionally, whenever inaccurate or fraudulent information is disseminated and/or obtained about them.

3.     The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4.     Defendant Experian Information Solutions, Inc., together with non-parties Equifax Information Services LLC ("Equifax"), and, Trans Union LLC ("Trans Union"), are the three major credit reporting bureaus in the United States.

5.     These CRAs sell information to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers, and other similar interested parties), commonly called "consumer reports," concerning individuals who may be applying for retail credit, housing, employment, or a car or mortgage loan.

6.     Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), federal law has required CRAs to implement and

utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private, and financial information that they compile and sell about individual consumers.

7.    "Credit is the lifeblood of the modern American economy, and for the American consumer access to credit has become inextricably tied to consumer credit scores as reported by credit reporting agencies."  *Burke v. Experian Info. Sols., Inc.*, 2011 WL 1085874, at *1 (E.D. Va. Mar. 18, 2011).

8.    Congress made the following findings when it enacted the FCRA in 1970:

> (a)    The banking system is dependent upon fair and accurate credit reporting.  Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.
>
> (b)    An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.
>
> (c)    Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.
>
> (d)    There is a need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

15 U.S.C. § 1681(a)(1-4).

9.    Thus, one of the fundamental purposes of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a

manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter." 15 U.S.C. § 1681(b). Accordingly, "[t]he FCRA evinces Congress' intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear 'grave responsibilities.'" *Cushman v. Trans Union*, 115 F.3d 220, 225 (3d Cir. 1997).

10.    The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 cong. Rec. 36570 (1970)] (emphasis added).

11.    Since 1970, when Congress enacted the Fair Credit Reporting Act, as amended, 15 U.S.C. § 1681 *et. seq.*, ("FCRA"), the federal law has required CRAs to have in place and to utilize reasonable procedures "to assure the maximum

possible accuracy" of the personal and financial information that they compile and sell about individual consumers.

12.     The FCRA also requires CRAs to conduct a reasonable reinvestigation to determine whether information disputed by consumers is inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which the CRA receives the notice of dispute from the consumer. This mandate exists to ensure that consumer disputes are handled in a timely manner and that inaccurate information contained within a consumer's credit report is corrected and/or deleted so as to not prevent said consumer from benefiting from his or her credit and obtaining new credit.

13.     In light of these important findings and purposes, Congress specifically noted "a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." *See* 15 U. S.C. § 1681(a)(4).

14.     The FCRA also requires furnishers of information, a creditor or other third party that provides information about consumer to a CRA, upon notice, to conduct a reasonable reinvestigation of all disputes with regard to the completeness or accuracy of any information it provides to the CRAs regarding a consumer and modify, delete, or permanently block any items of information found to be inaccurate, incomplete, or unverifiable after said reinvestigation is completed.

15.    Plaintiff brings claims against Defendants for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports, in violation of the FCRA, 15 U.S.C. § 1681e(b).

16.    As part of this action, Plaintiff seeks actual, statutory, and punitive damages, costs and attorneys' fees from the Defendants for their willful and/or negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*., as described herein.

## **PARTIES**

17.    Kiara West ("Plaintiff" or "Mr. West") is a natural person residing in Gainesville, Georgia, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

18.    Defendant Experian Information Solutions, Inc. ("Defendant Experian" or "Experian") is a corporation with a principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626, and is authorized to do business in the State of Georgia, including within this District. Experian can be served through its registered agent, C T Corporation System, located at 330 N Brand Blvd, Glendale, CA 91203.

19.    Defendant RentGrow, Inc. ("Defendant RentGrow" or "RentGrow") is a Massachusetts corporation with a principal place of business located at 400 5th Avenue, Suite 120, Waltham, Massachusetts 02451, and is authorized to do business

in the State of Georgia, including within this District. RentGrow can be served through its registered agent, Corporation Service Company, located at 84 State Street, Boston, MA 02109.

20.     Defendant Resident Verify, LLC ("Defendant Resident Verify" or "Resident Verify") is a Utah corporation with a principal place of business located at 4205 Chapel Ridge Road, Lehi, UT 84043, and is authorized to do business in the State of California, including within this District. Resident Verify can be served through its registered agent, Corporation Service Company, located at 15 West South Temple, Suite 600, Salt Lake City, UT 84101.

21.     Each Defendant is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f) and each Defendant is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

22.     RentGrow is also a "reseller" as that term is defined by 15 U.S.C. § 1681a(u).

23.     Resident Verify is also a "reseller" as that term is defined by 15 U.S.C. § 1681a(u).

## JURISDICTION AND VENUE

24.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

25.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTS
### Summary of the Fair Credit Reporting Act

26.     The FCRA governs the conduct of consumer reporting agencies in an effort to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

27.     The FCRA was designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681(a).

28.     Specifically, the statute was intended to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce

for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. *See* 15 U.S.C. § 1681(b).

29.     To that end, the FCRA imposes the following twin duties on consumer reporting agencies: (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports (15 U.S.C. § 1681e(b)); and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies (15 U.S.C. § 1681i).

30.     The FCRA provides consumers with a private right of action against consumer reporting agencies that willfully or negligently fail to comply with their statutory obligations under the FCRA.

### The "Mixed File" Problem

31.     A recurring and *known* issue within the credit reporting industry is the creation of "mixed files."

32.     A "mixed file" occurs when personal and credit information belonging to Consumer B appears in one or more of Consumer A's credit files.

33.     The Federal Trade Commission defined a mixed credit file as a file that "refers to a Consumer Report in which some or all of the information pertains to

Persons other than the Person who is subject to that Consumer Report." *F.T.C. v. TRW, Inc.*, 784 F. Supp. 361, 362 (N.D. Tex. 1991).

34.   "Mixed files" create a false description and representation of a consumer's credit history and result in the consumer not obtaining credit or other benefits of our economy.

35.   Defendant Experian's procedures for matching consumer information to a consumer report often cause the mixing of one consumer with another.

36.   Another consequence of mixed files is the resulting disclosure of a consumer's most personal identifying and financial information absent the consumer's knowledge or consent, or both.  This occurs when a consumer's file is mixed with that of another consumer, and either of those consumers applies for credit, housing, insurance, or employment, and Defendants sell information pertaining to one consumer in response to the application of the other. This violates the consumer's privacy and also greatly increases their risk of identity theft.

**The "Mixed File" Problem is Known to Defendant Experian**

37.   Mixed files are not a new phenomenon. Defendants have been on notice of the existence of mixed files.

38.   In particular, Defendant Experian has been on notice of the fact that its procedures for creating credit files, including its matching algorithms, are prone to

frequently cause mixed files, for over thirty (30) years.  *See Thompson v. San Antonia Retail Merchants Ass'n*, 682 F.2d 509, 511 (5th Cir. 1982).

39.    Defendant Experian mixes files even though every consumer has unique personal identifying information, such as a Social Security number.  That is so because their systems allow information to be included in a consumer's file even when the Social Security number reported with the information is different from the Social Security number on the consumer's file.

40.    Defendant Experian knows that its matching procedures are causing inaccurate consumer reports, consumer disclosures, and mixed files.

41.    In the 1990's, the Federal Trade Commission ("FTC") sued Defendant Experian's predecessor TRW (together with non-parties Equifax and Trans Union) because of its failure to comply with the FCRA including the mixing of consumers' files.

42.    In the 1990's, the Attorneys General of numerous states sued Defendant Experian's predecessor TRW (together with non-parties Equifax and Trans Union) because of its failure to comply with the FCRA including the mixing of consumers' files.

43.    In 1991, TRW signed a Consent Order with the FTC.  To prevent the occurrence or reoccurrence of a mixed file, TRW agreed to use, for matching and identification purposes, a consumer's full identifying information, defined as full

first and last name, full street address, zip code, birth year, any generational designation and social security number.

44.    In 1992, non-party Trans Union signed a Consent Order with the Attorneys General of 17 states.  Non-Party Trans Union agreed that it would maintain reasonable procedures to prevent the occurrence or reoccurrence of mixed files. For example, procedures during the reinvestigation process include, assigning mixed file cases to Senior Investigators who, as appropriate, must pull all files related to the consumer, fully verify disputed information, make any changes, deletions or additions to correct the file and resolve the dispute, and prepare a summary of the problem to be filed with another department for corrective action.

45.    In 1992, non-party Equifax signed an Agreement of Assurances with the State Attorneys General and agreed to take specific steps to prevent the occurrence of mixed files and to adopt procedures designed specifically to reinvestigate consumer disputes resulting from mixed files.

46.    In 1995, non-party Equifax signed a Consent Order with the FTC.  Non-party Equifax agreed it would follow reasonable procedures to assure the maximum possible accuracy of the information on a consumer's file including, but not limited to, procedures to detect logical errors prior to reporting information on a consumer's file, procedures to prevent mixing as a result of data entry by third parties when the

third party requests a consumer's report, and procedures during a reinvestigation specifically designed to resolve consumer disputes related to a mixed file.

47.     To prevent the occurrence of a mixed file, Defendant Experian together with non-parties Equifax and Trans Union entered into agreements not to place information in a consumer's file (other than certain public record information) unless it has identified such information by at least two of the following identifiers: (i) the Consumer's name; (ii) the Consumer's Social Security number; (iii) the Consumer's date of birth, or (iv) the Consumer's account number with a Subscriber or a similar identifier unique to the Consumer.

48.     Defendant Experian and non-parties Equifax and Trans Union continue to repeatedly mix consumers' files despite agreements with the FTC and State Attorneys General and hundreds of lawsuits filed against them by consumers whose files have been mixed.

49.     When those lawsuits have gone to trial, juries have found that Defendant Experian and non-parties Equifax and Trans Union, willfully violated the accuracy and reinvestigation requirements of the FCRA - §§ 1681e(b) and 1681i – and awarded punitive damages as high as $18 million.  Yet the "mixed file" problem continues.

50.     For example, in 2015, the New York Attorney General filed charges and settled claims with Defendant Experian and non-parties Equifax and Trans

Union over mixed files.[1]  *See In the Matter of Eric T. Schneiderman, Attorney General of the State of New York v. Experian Information Solutions, Inc.; Equifax Information Services, LLC; and Trans Union LLC*.

51.   Non-party Equifax's matching logic mixed two consumers' files when only seven out of the nine digits of the two consumers' Social Security numbers matched.  *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1224 (D.N.M. 2006).

52.   In 2002, the jury in *Judy Thomas v. Trans Union LLC*, District of Oregon, Case NO. 00-1150-JE, found Trans Union had willfully violated the FCRA by mixing Judy Thomas's personal and credit information with another consumer's and failing to unmix them despite Ms. Thomas' numerous disputes.  The jury awarded Ms. Thomas $300,000.00 in actual damages and $5,000,000.00 in punitive damages.  Despite the verdict, Defendant Experian continues to mix consumers' credit files with other consumers' credit files.

53.   In 2007, the jury in *Angela Williams v. Equifax Information Services, LLC*, Circuit Court for Orange County Florida, Case No. 48-2003-CA-9035-0, awarded Angela Williams $219,000.00 in actual damages and $2,700,000.00 in punitive damages for willfully violating the FCRA by mixing Angela Williams with

---

[1] https://ag.ny.gov/press-release/2015-ag-schneiderman-announces-groundbreaking-consumer-protection-settlement-three Last visited May 17, 2022; *see also* https://ag-ny.gov/pdfs/CRA%20Agreement%20Fully%20Executed%203.8.15.pdf Last visited May 17, 2022.

another consumer and failing to unmix them despite Ms. Williams' disputes. Despite the verdict, Defendant Experian continues to mix consumers' credit files with other consumers' credit files.

54.     In 2013, the jury in *Julie Miller v. Equifax Information Services, LLC*, District of Oregon, Case No. 3:11-cv-01231-BR, awarded Julie Miller $180,000.00 in actual damages and more than $18,000,000.00 in punitive damages for willfully violating the FCRA by mixing Julie Miller with another consumer and failing to unmix them despite Ms. Miller' numerous disputes.  Despite the verdict, Defendant Experian continues to mix consumers' credit files with other consumers' credit files.

55.     More recently, a jury assessed a $60 million dollar verdict against Trans Union for mixing innocent persons as terrorists and drug dealers by matching consumers with the Office of Foreign Asset Control's "terrorist alert" list based on first and last name alone.  *See Ramirez v. Trans Union, LLC*, No. 12-CV-00632-JSC, 2017 WL 5153280, at *1 (N.D. Cal. Nov. 7, 2017), *aff'd in part, vacated in part, rev'd in part sub nom*. *Ramirez v. TransUnion, LLC*, 951 F.3d 1008 (9th Cir. 20020). Despite the verdict, Defendant Experian continues to mix consumers' credit files with other consumers' credit files.

56.     Defendants have been sued thousands of times wherein an allegation was made that Defendants violated the FCRA.

57.   FCRA lawsuits have resulted in multi-million-dollar verdicts for consumers who fall victim to a mixed credit file.

58.   "Evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong evidence is required to cure the defendant's disrespect for the law." *Dalton v. CAI*, 257 F.3d 409, 418 (4th Cir. 2001) (noting that whether "other consumers have lodged complaints similar to Dalton's against CAI" is relevant to willfulness under the FCRA).   Moreover, repeated noncompliance with statutory duties can establish that the defendants acted willfully. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 53 (2007) (punitive damages can be awarded based on "reckless disregard for a statutory duty").

59.   No less than three federal Courts of Appeal have held a consumer reporting agency violates 15 U.S.C. § 1681e(b) and may be found to have willfully violated the FCRA when it mixes a consumer's file with another consumer.

60.   Notably, the Federal Trade Commission has specifically warned consumer reporting agencies to review their procedures when a mixed file occurs.

61.   Despite federal and state law, Congressional mandate, federal and state enforcement actions, and thousands of consumer lawsuits, mixed credit files remain a significant problem for innocent consumers, including Plaintiff.

## The "Mixed File" Problem is Known to Defendants RentGrow and Resident Verify

62.     Resellers purchase consumers' credit information from other CRAs, such as Defendant Experian, and non-parties Equifax and Trans Union.

63.     Once Defendants RentGrow and Resident Verify receive consumer credit information from other CRAs, they each assemble and merge the information into a credit report, which they each then sell to third parties.

64.     Resellers, like Defendants RentGrow and Resident Verify, are subject to the FCRA's requirement to use reasonable procedures to assure maximum possible accuracy of the information in the consumer reports they sell.  15 U.S.C. § 1681e(b).

65.     Courts have repeatedly held that resellers, like Defendants RentGrow and Resident Verify, do not meet the requirements of Section 1681e(b) by merely reproducing the information furnished to them by other credit bureaus.  *See, Rogue v. CoreLogic Credco, LLC*, No. 19-cv-00260-BLW, 2020 WL 7061745 at *4 (D. Idaho Dec. 2, 2020) ("[D]istrict courts have repeatedly rejected Credco and other resellers' arguments that a reseller is only required to accurately reproduce the information furnished to it by other credit bureaus.  These courts have, instead, found that, as a matter of law, a reseller can be subject to liability under § 1681e(b) for failing to follow reasonable procedures to assure the maximum possible accuracy of the information it provides on a consumer"); *Starkey v. Experian Information*

*Solutions, Inc.*, 32 F. Supp. 3d 1105, 1109-11 (C.D. Cal. 2014) (rejecting Credco's argument that its report was "accurate" because it "fully and accurately included all of the information [the CRAs] provided," holding that a reseller, like other consumer reporting agencies, must employ reasonable procedures to assure the maximum possible accuracy of the information in its report); *Dirosa v. Equifax Information Servs, LLC*, 2014 WL 3809202, at *3 (C.D. Cal. Jan. 21, 2014) (rejecting Credco's argument that it was not liable under § 1681e(b) because it "fully and accurately included all of the information [the CRAs] provided"); *Ocasio v. CoreLogic Credco, LLC*, 2015 WL 5722828, at **3-4 (D. NJ. Sept. 29, 2015) (rejecting Credco's argument that its procedures were reasonable as a matter of law under § 1681e(b) "because it accurately compiled and reported information collected from the credit bureaus"); *Willoughby v. Equifax Svs., LLC*, 2013 WL 8351203, at **2-3 (N.D. Ala. Aug. 12, 2013) (finding that resellers are subject to the same requirements under § 1681(b) as other consumer reporting agencies to follow reasonable procedures to assure the accuracy of its reports); *Waterman v. Experian Information Solutions, Inc.*, 2013 WL 675764, at **2-3 (C.D. Cal. Feb. 25, 2013) (same); *Dively v. Trans Union, LLC*, 2012 WL 246095, at **3-4 (E.D. Penn. Jan. 26, 2012) (same).

66.    The Federal Trade Commission has also explained that "[p]ersons who purchase consumer reports for resale (also known as 'resellers') are covered by the FCRA as consumer reporting agencies, and have all the obligations of other

CRAs...'' Prepared Statement of Fed. Trade Commiss. On the Fair Credit Reporting Act Before the Senate Banking Committee on Banking, Housing, and Urban Affairs, 2003 FTC LEXIS 101, 14-15 (July 10, 1993).

67.     Notwithstanding all this notice, Defendants RentGrow and Resident Verify continue to sell consumer reports without sufficient independent investigation, audits, research, or review to assure that the information in the reports is accurate.

68.     This lack of procedures is highlighted by Defendant RentGrow's and Resident Verify's lack of procedures to prevent selling mixed files.

69.     Defendants RentGrow and Resident Verify are aware that the CRAs they purchase information from, including Defendant Experian, have a long history of mixed file problems.

70.     Defendants RentGrow and Resident Verify know of the CRAs' practice of mixing consumer files, including Defendant Experian's practice of mixing consumer files, but Defendants RentGrow and Resident Verify refuse to implement any procedures to adequately review or analyze Defendant Experian's data to determine if Defendant Experian is providing information from a mixed file.

71.     Despite knowing about the lawsuits, government enforcement actions, and Defendant Experian's history of mixing consumer's files, Defendants RentGrow and Resident Verify took no actions to assure accuracy of the information they each

reported although it was obvious that Defendant Experian mixed Plaintiff's file with the file of a different consumer who had a different name, social security number, address history, and credit accounts.

72.    Instead, as is the case here, Defendants RentGrow and Resident Verify resold Defendant Experian's information without conducting any level of review as to its accuracy.  Defendants RentGrow and Resident Verify did so even when the data had obvious red flags of a mixed file.

73.    Defendants RentGrow and Resident Verify have also been on notice for years that their respective policies were insufficient under the FCRA regarding the accuracy of their information.

74.    Despite knowing the breadth and severity and even the consequences of the mixed file problem, Defendants do not maintain policies and procedures to ensure compliance with their duties under the FCRA.

75.    Plaintiff's claims arise out of the Defendants' blatantly inaccurate credit reporting, wherein Defendants published in consumer reports about Plaintiff the information of another consumer because Defendants mixed Plaintiff's credit file with that of an unrelated consumer.

**Plaintiff Applies to Lease a Trailer Home with Highland Mobile Homes Trailer Park**

76.     In or around March 2024, Plaintiff began searching for a new place to live. Specifically, Plaintiff was interested in a home that was close to work and affordable.

77.     On or about March 5, 2024, Plaintiff found a trailer home at the Highland Mobile Homes Trailer Park ("Highland Mobile Homes").

78.     On or about March 5, 2024, Plaintiff completed and submitted a lease application to Highland Mobile Homes and paid an application fee.

79.     For Highland Mobile Homes to evaluate Plaintiff's eligibility, it would need to obtain copies of his credit files. Plaintiff provided Highland Mobile Homes with his personal identification information, including his Social Security number, and authorized it to obtain copies of his credit files.

80.     Highland Mobile Homes contracted with Defendant Resident Verify to conduct tenant screening on prospective tenants to determine the prospective tenant's eligibility for renting the apartment.

81.     On or about March 5, 2024, Highland Mobile Homes ordered a consumer report on Plaintiff from Defendant Resident Verify.

82.     To create the consumer report ordered by Highland Mobile Homes, Defendant Resident Verify requested and obtained consumer credit information about Plaintiff from Defendant Experian.

**Defendant Experian Publishes Inaccurate Information about Plaintiff**

83.     On or about March 6, 2024, Defendant Experian sold a consumer report to Defendant Resident Verify in response to Defendant Resident Verify's request for a consumer report about Plaintiff.

84.     The consumer report Defendant Resident Verify obtained from Defendant Experian included numerous accounts and identification information that did not belong to Plaintiff.  Rather, those accounts and identification information belonged to Ciara West ("Plaintiff's Sister").

85.     Defendant Experian took no steps whatsoever to review, analyze, or audit the information it sold prior to selling a consumer report about Plaintiff to Defendant Resident Verify.

86.     Prior to selling the consumer report about Plaintiff, Defendant Experian did nothing to reconcile the inconsistent information on the face of the credit report.

87.     In its consumer report to Defendant Resident Verify, Defendant Experian mixed Plaintiff's file with Plaintiff's Sister's credit information and reported Plaintiff's Sister's name, "Ciara West" and "Ciara L West".

88.     In its consumer report to Defendant Resident Verify, Defendant Experian also mixed Plaintiff's file with unknown consumers credit information and reported, "Siara West" and "Ciara L Wesr" and "Ciara Faan West".

89.     Upon information and belief, in its consumer report to Defendant Resident Verify, Defendant Experian mixed Plaintiff's file with his sister's credit information and reported Plaintiff's Sister's social security number, ending 4749.

90.     Upon information and belief, in its consumer report to Defendant Resident Verify, Defendant Experian mixed Plaintiff's file with an unknown individual's credit information and reported Plaintiff's Sister's social security number, ending 4950.

91.     In its consumer report to Defendant Resident Verify, Defendant Experian mixed Plaintiff's file with his sister's credit information and reported Plaintiff's Sister's addresses:

      (a)    371 Joshua Tree Ln
             Augusta, GA 30907-2793

      (b)    2525 Center West Pkwy Apt.70
             Augusta, GA 30909-4607

      (c)    216 Mulberry St
             Thomson, GA 30824-1731

      (d)    803 C St.
             Thomson, GA 30824-1706

      (e)    408 Watson St.
             Thomson, GA 30824-2909

92.     Upon information and belief, in its consumer report to Defendant Resident Verify, Defendant Experian mixed Plaintiff's file with his sister's credit information and reported Plaintiff's Sister's accounts:

(a)     Jefferson Capital Syst
        Date Opened: December 7, 2023
        Original Creditor: Sprint
        Balance: $1,393.00

(b)     Self-Financial/Lead Bank
        Date Opened: September 13, 2020

(c)     Self/SouthState Bank
        Date Opened: July 29, 2022
        Balance: $185.00

(d)     National Credit System
        Account Number: 487324X
        Date Opened: August 29, 2022
        Original Creditor: RiverCreek Apartments
        Balance: $6,339.00

(e)     Caine & Weiner
        Account Number: 197735XX
        Date Opened: October 4, 2022
        Original Creditor: Progressive
        Balance: $452.00

(f)     Self/SouthState Bank
        Account Number: CBA000XXXXXXXXXXXXXX
        Date Opened: March 22, 2022
        Original Creditor: Atlantic Cap. Bk Self Lendor

93.   Had Defendant Experian taken any steps to investigate whether Plaintiff's Sister's accounts and personally identifying information belonged to Plaintiff before publishing the same to Defendant Resident Verify in a consumer report about Plaintiff, it would have easily verified that that information belonged to Plaintiff's Sister, not him.

94.     Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy of the credit information it published and maintained concerning Plaintiff.

**Defendants Resident Verify Publishes Inaccurate Information about Plaintiff**

95.     Defendant Resident Verify then assembled its own consumer report about Plaintiff inclusive of the information contained in Defendant Experian's consumer report.

96.     On or about March 6, 2024, Defendant Resident Verify published a consumer report to Highland Mobile Homes, inclusive of Defendant Experian's information, in response to Plaintiff's housing application.

97.     Defendant Resident Verify took no steps whatsoever to review, analyze, or audit the information it received from Defendant Experian prior to selling it to Highland Mobile Homes.

98.     Defendant Resident Verify did nothing to reconcile the inconsistent information on the face of the consumer report, prior to selling the consumer report about Plaintiff to Highland Mobile Homes.

99.     Defendant Resident Verify published a consumer report to Highland Mobile Homes, inclusive of Defendant Experian's information, which included Plaintiff's Sister's name, "Ciara West" as well as an unknown consumer's name, "Ciara L. Wesr".

100.   In its consumer report to Highland Mobile Homes, Defendant Resident Verify mixed Plaintiff's file with Plaintiff's Sister's credit information, and reported Plaintiff's Sister's addresses:

      (a)    371 Joshua Tree Ln
              Augusta, GA 30907-2793

      (b)    2525 Center West Pkwy Apt.70
              Augusta, GA 30909-4607

      (c)    216 Mulberry St
              Thomson, GA 30824-1731

      (d)    803 C St.
              Thomson, GA 30824-1706

      (e)    408 Watson St.
              Thomson, GA 30824-2909

101.   In its consumer report to Highland Mobile Homes, Defendant Resident Verify mixed Plaintiff's file with Plaintiff's Sister's credit information, and reported Plaintiff's Sister's accounts:

      (a)    Jefferson Capital Syst
              Date Opened: December 7, 2023
              Original Creditor: Sprint
              Balance: $1,393.00

      (b)    Self-Financial/Lead Bank
              Date Opened: September 13, 2020

      (c)    Self/SouthState Bank
              Date Opened: July 29, 2022
              Balance: $185.00

(d)     National Credit System
        Account Number: 487324X
        Date Opened: August 29, 2022
        Original Creditor: RiverCreek Apartments
        Balance: $6,339.00

(e)     Caine & Weiner
        Account Number: 197735XX
        Date Opened: October 4, 2022
        Original Creditor: Progressive
        Balance: $452.00

(f)     Self/SouthState Bank
        Account Number: CBA000XXXXXXXXXXXXXX
        Date Opened: March 22, 2022

102.   Further, within the "Evictions, Filings, & Public Records" section of its

consumer report, Resident Verify also published the following civil court record

from Columbia County, Georgia:

### LOVETT, NICOLE VS WEST, CIARA

**Defendant:**

| | |
|---|---|
| Full Name: | WEST, CIARA |
| Address: | 371 JOSHUA TREE DR |
| City, State, Zip : | MARTINEZ,GA,30907 |

**Plaintiff:**

| | |
|---|---|
| Full Name: | LOVETT, NICOLE |

**Judgment Information:**

| | |
|---|---|
| Case Number: | 2023-SCD-0023 |
| Case Type: | DISPOSSESSORY |
| Case Disposition : | JUDGMENT |
| Court Location: | Columbia Magistrate Court - Evans - Magistrate Magistrate Court |
| Reference Id : | 44qinr77mynegvsugj6q570xb |
| Judgment Amount : | $0 |

103.   The civil eviction record and judgment published by Resident Verify about Plaintiff to Highland Mobile Homes ***does not*** belong to Plaintiff.

104.   Resident Verify published inaccurate information about Plaintiff.  The above-referenced information should not have been included in any consumer report about Plaintiff.

105.   Specifically, it is indisputable that prior to furnishing the report about Plaintiff to Highland Mobile Homes, Resident Verify failed to consult the widely available public court records in Columbia County, Georgia, which indicate that the aforementioned civil court record does not belong to Plaintiff.

106.   A cursory review of the widely available public court records confirms that the record belongs to an individual named Ciara West ("Plaintiff's Sister"). Resident Verify's unreasonable or non-existent procedures allowed it to publish a report about Plaintiff wherein Resident Verify also mixed in the rental history of Plaintiff's sister into that same report.

107.   Had Resident Verify actually consulted or obtained the widely available public court records, it would have seen the obvious discrepancies between Plaintiff's sister and Plaintiff.

108.   The discrepancies that should have caused Resident Verify to realize Plaintiff is not the same person as Plaintiff's Sister include the following:

(a) Plaintiff's legal name is "Kiara West" but the name of the individual subject to the civil eviction record and judgment is identified in the public court records as "Ciara West";

(b) Plaintiff's address history confirms that he did not live at the address that was the subject to the civil eviction record, 371 Joshua Tree Dr, Martinez, GA 30907;

(c) Plaintiff's Social Security Number, which was provided to Resident Verify and is contained on the face of the consumer report, is entirely different than that of Plaintiff's Sister as confirmed by the public court records.

109. The sole reason the inaccurate civil eviction record and judgment were reported as belonging to Plaintiff was that Resident Verify failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the consumer report it sold about Plaintiff to Plaintiff's prospective landlord.

110. Had Resident Verify followed reasonable procedures, it would have discovered that the inaccurate, stigmatizing civil eviction record and judgment belong to Plaintiff's Sister with a different first name, address history and Social Security Number than Plaintiff.

111.   Had Defendant Resident Verify taken any steps to investigate whether Plaintiff's Sister's Accounts and personally identifying information, and eviction case number 2023-SCD-0023 belonged to Plaintiff before reporting the same to Plaintiff's potential landlord, it would have easily verified that that information belonged to Plaintiff's Sister, and not him.

112.   Resident Verify violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy of the credit information it published and maintained concerning Plaintiff.

### Highland Mobile Homes Denies Plaintiff's Application

113.   On or about March 21, 2024, Highland Mobile Homes received and reviewed Defendant Resident Verify's consumer report about Plaintiff, inclusive of information published by Defendant Experian.

114.   On or about March 21, 2024, Highland Mobile Homes denied Plaintiff's housing application as a direct result of Defendant Resident Verify's and Experian's inaccurate reporting.

**Plaintiff Applies to Lease an Apartment with Walton Summit**

115.   Disappointed about being denied the mobile home, Plaintiff continued with his housing search.

116.   On or about April 4, 2024, Plaintiff toured an apartment at Walton Summit Housing ("Walton Summit").  Plaintiff was interested in the apartment as it was within his budget and located close enough to work that he could walk to work.

117.   On or about April 4, 2024, Plaintiff completed and submitted a lease application to Walton Summit and any other supporting documents required to secure the apartment. Plaintiff also paid an application fee.

118.   For Walton Summit to evaluate Plaintiff's eligibility, it would need to obtain copies of his credit files. Plaintiff provided Walton Summit with his personal identification information, including his Social Security number, and authorized it to obtain copies of his credit files.

119.   Walton Summit contracted with Defendant RentGrow to conduct tenant screening on prospective tenants to determine the prospective tenant's eligibility for renting the apartment.

120.   On or about April 4, 2024, Walton Summit ordered a consumer report on Plaintiff from Defendant RentGrow.

121.   To create the consumer report ordered by Walton Summit, Defendant RentGrow requested and obtained consumer credit information about Plaintiff from Defendant Experian.

**Defendant Experian Publishes Inaccurate Information about Plaintiff**

122.   On or about April 4, 2024, Defendant Experian sold a consumer report to Defendant RentGrow in response to Defendant RentGrow's request for a consumer report about Plaintiff.

123.   The consumer report Defendant RentGrow obtained from Defendant Experian included numerous accounts and identification information that did not belong to Plaintiff.  Rather, those accounts and identification information belonged to Plaintiff's Sister.

124.   Defendant Experian took no steps whatsoever to review, analyze, or audit the information it sold prior to selling a consumer report about Plaintiff to Defendant RentGrow.

125.   Prior to selling the consumer report about Plaintiff, Defendant Experian did nothing to reconcile the inconsistent information on the face of the credit report.

126.   In its consumer report to Defendant RentGrow, Defendant Experian mixed Plaintiff's file with Plaintiff's Sister's credit information and reported Plaintiff's Sister's name, "Ciara West" and "Ciara L West".

127.   In its consumer report to Defendant RentGrow, Defendant Experian also mixed Plaintiff's file with unknown consumers credit information and reported, "Siara West" and "Ciara L Wesr" and "Ciara Faan West".

128.   Upon information and belief, in its consumer report to Defendant RentGrow, Defendant Experian mixed Plaintiff's file with his sister's credit information and reported Plaintiff's Sister's social security number, ending 4749.

129.   Upon information and belief, in its consumer report to Defendant RentGrow, Defendant Experian mixed Plaintiff's file with an unknown individual's credit information and reported Plaintiff's Sister's social security number, ending 4950.

130.   In its consumer report to Defendant RentGrow, Defendant Experian mixed Plaintiff's file with his sister's credit information and reported Plaintiff's Sister's addresses:

    (a)    371 Joshua Tree Ln
                Augusta, GA 30907-2793

    (b)    2525 Center West Pkwy Apt.70
                Augusta, GA 30909-4607
    (c)    216 Mulberry St
                Thomson, GA 30824-1731

    (d)    803 C St.
                Thomson, GA 30824-1706

    (e)    408 Watson St.
                Thomson, GA 30824-2909

131.   Upon information and belief, in its consumer report to Defendant RentGrow, Defendant Experian mixed Plaintiff's file with his sister's credit information and reported Plaintiff's Sister's accounts:

     (a)    Jefferson Capital Syst
               Date Opened: December 7, 2023
               Original Creditor: Sprint
               Balance: $1,393.00

     (b)    Self-Financial/Lead Bank
               Date Opened: September 13, 2020

     (c)    Self/SouthState Bank
               Date Opened: July 29, 2022
               Balance: $185.00

     (d)    National Credit System
               Account Number: 487324X
               Date Opened: August 29, 2022
               Original Creditor: RiverCreek Apartments
               Balance: $6,339.00

     (e)    Caine & Weiner
               Account Number: 197735XX
               Date Opened: October 4, 2022
               Original Creditor: Progressive
               Balance: $452.00

     (f)    Self/SouthState Bank
               Account Number: CBA000XXXXXXXXXXXXXX
               Date Opened: March 22, 2022

132.   Had Defendant Experian taken any steps to investigate whether Plaintiff's Sister's accounts and personally identifying information belonged to Plaintiff before publishing the same to Defendant RentGrow in a consumer report

about Plaintiff, it would have easily verified that that information belonged to Plaintiff's Sister, not him.

133.   Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy of the credit information it published and maintained concerning Plaintiff.

**Defendant RentGrow Publishes Inaccurate Information about Plaintiff**

134.   Defendant RentGrow then assembled its own consumer report about Plaintiff inclusive of the information contained in Defendant Experian's consumer report.

135.   On or about April 4, 2024, Defendant RentGrow published a consumer report to Walton Summit, inclusive of Defendant Experian's information, in response to Plaintiff's housing application.

136.   Defendant RentGrow published a consumer report to Walton Summit, inclusive of Defendant Experian's information, which included an unknown consumer's name, "Ciara L. Wesr" and "Ciara Faan West."

137.   Defendant RentGrow published a consumer report to Walton Summit, inclusive of Defendant Experian's information, which included Plaintiff's Sister's addresses:

(a)   371 Joshua Tree Ln
Augusta, GA 30907-2793

    (b)    2525 Center West Pkwy Apt.70
                  Augusta, GA 30909-4607

    (c)    216 Mulberry St
                  Thomson, GA 30824-1731

138.   Defendant RentGrow published a consumer report to Walton Summit, inclusive of Defendant Experian's information, which included Plaintiff's Sister's accounts:

    (a)    Jefferson Capital Syst
                  Date Opened: December 7, 2023
                  Original Creditor: Sprint
                  Balance: $1,393.00

    (b)    Self-Financial/Lead Bank
                  Date Opened: September 13, 2020

    (c)    Self/SouthState Bank
                  Date Opened: July 29, 2022
                  Balance: $185.00

    (d)    National Credit System
                  Account Number: 487324X
                  Date Opened: August 29, 2022
                  Original Creditor: RiverCreek Apartments
                  Balance: $6,339.00

    (e)    Caine & Weiner
                  Account Number: 197735XX
                  Date Opened: October 4, 2022
                  Original Creditor: Progressive
                  Balance: $452.00

    (f)    Self/SouthState Bank
                  Account Number: CBA000XXXXXXXXXXXXXX
                  Date Opened: March 22, 2022

139.   Further, within the "Collections" section of its consumer report, RentGrow also published the following:

**RIVERCREEK APTS (Sub# 2980803 - YC )**

Responsibility: Individual

| | | | | | |
|---|---|---|---|---|---|
| Current Balance: | $6,339 | Balance Date: | 03/31/2024 | Date Assigned: | 08/29/2022 |
| Original Amount: | $6,339 | Last Active On: | n/a | Date Updated: | n/a |
| Agency Name: NATIONAL CREDI | | | | | |

140.   The collection record published by RentGrow about Plaintiff to Walton Summit *did not* belong to Plaintiff.

141.   Defendant RentGrow published inaccurate information about Plaintiff. The above-referenced information should not have been included in any consumer report about Plaintiff.

142.   Had Defendant RentGrow followed reasonable procedures, it would have discovered that the inaccurate, stigmatizing collection record belong to Plaintiff's Sister with a different first name, address history and Social Security Number than Plaintiff.

143.   Had Defendant RentGrow taken any steps to investigate whether Ciara's Accounts, personal identifying information, and collection record belonged to Plaintiff before reporting the same to Plaintiff's potential landlord, it would have easily verified that that information belonged to Plaintiff's Sister, and not him.

144.   RentGrow violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy of the credit information it published and maintained concerning Plaintiff.

## Walton Summit Denies Plaintiff's Application

145.   On or about April 4, 2024, Walton Summit received and reviewed Defendant RentGrow's consumer report about Plaintiff, inclusive of the information published by Defendant Experian.

146.   On or about April 4, 2024, and as a direct result of Defendant RentGrow's and Experian's inaccurate reporting, Walton Summit denied Plaintiff's housing application.

## Plaintiff's Mixed Credit File

147.   Shocked, worried, and confused, Plaintiff secured and reviewed a copy of his consumer report produced by Resident Verify to Highland Mobile Homes.

148.   Further, Plaintiff reviewed a copy of his consumer report produced by RentGrow to Walton Summit.

149.   Further, Plaintiff also reviewed a copy of his credit file from Experian.

150.   Upon reviewing the contents of consumer reports, Plaintiff was shocked at the appearance of several pieces of information that did not belong to Plaintiff at all.

151. Specifically, Defendants were reporting accounts, evictions, collections, and personally identifying information that belonged to Plaintiff's Sister.

152. By reporting Plaintiff's Sister's information in the consumer reports and credit files about Plaintiff, Defendants failed to follow reasonable procedures to assure the maximum possible accuracy of the information contained within Plaintiff's credit files and consumer reports, in violation of 15 U.S.C. § 1681e(b).

153. As a result of the "mixed file," Defendants made it practically impossible for Plaintiff to obtain housing.

154. Due to Defendant's inaccurate reporting, Plaintiff was rendered homeless. When lucky, he found a family member or friend's coach for refuge. When he could afford it, he stayed in hotels. And on other days, he lived in his car.

155. At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

156. At all times pertinent hereto, Defendants' conduct, as well as that of their respective agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

157.   Defendants are aware of the shortcomings of their procedures and intentionally choose not to comply with the FCRA to lower their costs.  Accordingly, Defendants' violations of the FCRA are willful.

158.   As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damages including but not limited to, loss of housing opportunities; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress including the mental anguish and emotional pain, anxiety, fear, frustration, humiliation, and embarrassment of housing denials and having another consumer's personally identifying information and credit information, including inquiries, mixed into Plaintiff's credit file.

## CLAIMS FOR RELIEF
### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy
### (Claim for Relief Against Defendant Experian)

159.   Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

160.   The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible*

*accuracy* of the information concerning the individual about whom the report relates.

15 U.S.C. §1681e(b) (emphasis added).

161.   On at least two occasions, Defendant Experian prepared patently false consumer reports concerning Plaintiff.

162.   Defendant Experian mixed another consumer's personal and credit account information into Plaintiff's credit file, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness.

163.   Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

164.   As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damages including but not limited to, loss of housing opportunities; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress including the mental anguish and emotional pain, anxiety, fear, frustration, humiliation, and embarrassment of housing denials and having another consumer's personally identifying information and credit information, including inquiries, mixed into Plaintiff's credit file.

165.   Defendant Experian's conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an

amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, Defendant Experian was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

166.   Plaintiff is entitled to recover attorneys' fees and costs from Defendant Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
## 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy
### (Claim for Relief Against Defendants Resident Verify and RentGrow)

167.   Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

168.   The above-referenced reports are "consumer reports" within the meaning of 15 U.S.C. § 1681a(d).

169.   Defendant Resident Verify negligently and/or willfully failed to comply with 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports it published concerning Plaintiff.

170.   Defendant RentGrow negligently and/or willfully failed to comply with 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum

possible accuracy in the preparation of the credit reports it published concerning Plaintiff.

171.   Defendant Resident Verify knew or should have known from the face of the report it provided regarding Plaintiff that it was inaccurate and that its procedures were not reasonable.

172.   Defendant RentGrow knew or should have known from the face of the report it provided regarding Plaintiff that it was inaccurate and that its procedures were not reasonable.

173.   As a result of Defendant Resident Verify's and RentGrow's conduct, action, and inaction, Plaintiff suffered damages including but not limited to, loss of housing opportunities; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress including the mental anguish and emotional pain, anxiety, fear, frustration, humiliation, and embarrassment of housing denials and having another consumer's personally identifying information and credit information, including inquiries, mixed into Plaintiff's credit file.

174.   Defendant Resident Verify's and RentGrow's conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C.

§ 1681n.  Alternatively, Defendants Resident Verify and RentGrow were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

175.   Plaintiff is entitled to recover attorneys' fees and costs from Defendants Resident Verify and RentGrow in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i.   Determining that Defendants negligently and/or willfully violated the FCRA;

ii.   Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii.   Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv.   Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

//

RESPECTFULLY SUBMITTED this 28th day of June, 2024.

*/s/ Jenna Dakroub*
Jenna Dakroub, GA #385021
**CONSUMER ATTORNEYS**
260 Peachtree Street NW, Suite 2200
Atlanta, GA 30303
T: (602) 807-1525
F: (718) 715-1750
E: jdakroub@consumerattorneys.com

**CONSUMER ATTORNEYS**
8245 N. 85th Way
Scottsdale, AZ 85258

*Attorneys for Plaintiff,*
*Kiara West*